IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TEXAS FEED FAT, INC., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-cv-00189-Z-BR |
| | § | |
| NATIONWIDE AGRIBUSINESS | § | |
| INSURANCE COMPANY | § | |
| *Defendant.* | § | |

**DEFENDANT NATIONWIDE AGRIBUSINESS INSURANCE COMPANY'S FIRST
AMENDED ANSWER AND DEFENSES TO PLAINTIFF'S ORIGINAL PETITION**

Defendant Nationwide Agribusiness Insurance Company ("Nationwide" or "Defendant"),
files this First Amended Answer and Defenses to Plaintiff's Original Petition, and would
respectfully show as follows:

**I.    DEFENDANT NATIONWIDE AGRIBUSINESS INSURANCE COMPANY'S
FIRST AMENDED ANSWER TO PLAINTIFF'S ORIGINAL PETITION**

Nationwide makes the following admissions and denials to the claims of Plaintiff Texas
Feed Fat, Inc. ("Plaintiff") as authorized by Federal Rule of Civil Procedure 8(b):

**I.
THE PARTIES**

1.      Upon information and belief, Nationwide admits that Plaintiff is a Texas
corporation that offices in Deaf Smith County, Texas. Answering further, Nationwide admits that
Plaintiff is a domestic for-profit corporation with its principal place of business in Texas and
incorporated under the laws of the State of Texas. Through a diligent search of publicly available
information, Nationwide further admits that Plaintiff's principal place of business was, at one
time, in the State of Oklahoma.

**DEFENDANT'S
EXHIBIT A**

2.      Nationwide admits the allegations set forth in Paragraph 2 of Plaintiff's Original Petition. Answering further, Nationwide admits that it is a corporation incorporated under the laws of the State of Iowa and maintains its principal place of business in the State of Iowa. Nationwide further admits it is lawfully engaged in the business of insurance in Texas, and that it has appeared and answered in this lawsuit.

## II.
## DISCOVERY

3.      Nationwide denies that discovery in this case should be conducted under the Texas Rules of Civil Procedure. Discovery should be conducted pursuant to the Federal Rules of Civil Procedure and this Court's scheduling order.

## III.
## CLAIM FOR RELIEF

4.      Paragraph 4 of Plaintiff's Original Petition addresses jurisdictional limits on damages in Texas state court and does not require a response from Nationwide. To the extent a response is required, Nationwide denies the allegations set forth in Paragraph 4 of Plaintiff's Original Petition and further denies that Plaintiff is entitled to the relief sought.

## IV.
## JURISDICTION AND VENUE

5.      Paragraph 5 of Plaintiff's Original Petition addresses subject matter jurisdiction in Texas state court and does not require a response from Nationwide. To the extent a response is required, Nationwide admits that the United States District Court for the Northern District of Texas, Amarillo Division, has diversity jurisdiction over this case. Nationwide denies the remaining allegations contained in Paragraph 5 of Plaintiff's Original Petition.

6.     Paragraph 6 of Plaintiff's Original Petition addresses venue in Texas state court and does not require a response from Nationwide. To the extent a response is required, Nationwide admits that venue is proper in the United States District Court for the Northern District of Texas, Amarillo Division. Nationwide denies the remaining allegations contained in Paragraph 6 of Plaintiff's Original Petition.

## V.
## FACTUAL BACKGROUND

7.     Nationwide admits that it issued Policy No. COP 118400 A to Plaintiff for the policy period October 15, 2021, to October 15, 2022 (the "Policy"), and that Plaintiff is a named insured under the Policy. Nationwide admits that 149 Dairy Rd., Hereford, Texas 79045-8511 (the "Property") is an insured property under the Policy. Nationwide denies the remaining allegations set forth in Paragraph 8 of Plaintiff's Original Petition.

8.     Nationwide admits that the Policy includes a cosmetic loss exclusion, part of which is reproduced in Paragraph 8 of Plaintiff's Original Petition. Nationwide denies the remaining allegations set forth in Paragraph 8 of Plaintiff's Original Petition.

9.     Nationwide admits that Plaintiff's representatives reported an insurance claim to Nationwide alleging storm-relate damages to the Property which occurred on or about May 1, 2022 to which Nationwide assigned claim number 221306-GN. Nationwide denies the remaining allegations set forth in Paragraph 9 of Plaintiff's Original Petition.

10.     Nationwide admits that it issued payment for covered damages arising out of the subject insurance claim totaling $270,236.81. Nationwide denies the remaining allegations set forth in Paragraph 10 of Plaintiff's Original Petition.

11.     Nationwide admits that it assigned Darrin Hinze to adjust the subject claim. Nationwide further admits that it prepared a coverage decision letter dated June 10, 2022, which speaks for itself. Nationwide denies the remaining allegations set forth in Paragraph 11 of Plaintiff's Original Petition.

12.     Nationwide admits that it prepared a coverage decision letter dated June 10, 2022, which speaks for itself. Nationwide denies the remaining allegations set forth in Paragraph 12 of Plaintiff's Original Petition.

13.     Nationwide admits that the Policy includes a cosmetic loss exclusion, part of which is reproduced in Paragraph 13 of Plaintiff's Original Petition.

14.     Nationwide admits that it retained Haag Engineering representative Timothy P. Marshall, P.E. to investigate damages at the property as part of its claim investigation. Nationwide admits that Mr. Marshall completed a report of his findings which is dated June 7, 2022. further admits that it prepared a coverage decision letter dated June 10, 2022, which speaks for itself. Nationwide denies the remaining allegations set forth in Paragraph 14 of Plaintiff's Original Petition.

15.     Nationwide admits that it prepared a coverage decision letter dated June 10, 2022, which speaks for itself. Nationwide further admits that Mr. Marshall prepared a report of his findings dated June 7, 2022, which also speaks for itself. Nationwide denies the remaining allegations set forth in Paragraph 15 of Plaintiff's Original Petition.

16.     Nationwide denies the allegations set forth in Paragraph 16 of Plaintiff's Original Petition.

17.     Nationwide denies the allegations set forth in Paragraph 17 of Plaintiff's Original Petition.

18. Nationwide denies the allegations set forth in Paragraph 18 of Plaintiff's Original Petition.

19. Nationwide admits that Plaintiff hired public adjuster Hank Messer for representation in the Claim. Nationwide further admits that Plaintiff retained Orlo Forensics in connection with the Claim. Nationwide denies the remaining allegations set forth in Paragraph 19 of Plaintiff's Original Petition.

20. Nationwide denies the allegations set forth in Paragraph 20 of Plaintiff's Original Petition.

21. Nationwide denies the allegations set forth in Paragraph 21 of Plaintiff's Original Petition.

22. Nationwide denies the allegations set forth in Paragraph 22 of Plaintiff's Original Petition.

**VI.**
**<u>CAUSES OF ACTION</u>**

23. Paragraph 23 of Plaintiff's Original Petition contains a reference to the foregoing paragraphs for incorporation by reference and does not require a response by Nationwide. To the extent that a response is required, Nationwide reasserts its admissions and denials that were set forth in the foregoing paragraphs of this First Amended Answer.

**A. Breach of Contract**

24. Nationwide admits that it had a contract of insurance with Plaintiff. Nationwide denies the remaining allegations set forth in Paragraph 24 of Plaintiff's Original Petition.

**B. Prompt Payment of Claims Statute**

5

25.    Nationwide denies the allegations set forth in Paragraph 25 of Plaintiff's Original Petition.

26.    Nationwide denies the allegations set forth in Paragraph 26 of Plaintiff's Original Petition. Nationwide denies that Plaintiff is entitled to the relief sought in Paragraph 26 of Plaintiff's Original Petition.

### C.  Bad Faith

27.    Nationwide admits that it is required to comply with Texas law.

28.    Nationwide denies the allegations set forth in Paragraph 28 of Plaintiff's Original Petition, including subparagraph (1) – (4).

29.    Nationwide denies the allegations set forth in Paragraph 29 of Plaintiff's Original Petition.

30.    Nationwide denies the allegations set forth in Paragraph 30 of Plaintiff's Original Petition. Nationwide denies that Plaintiff is entitled to the relief sought in Paragraph 30 of Plaintiff's Original Petition.

### D.  Attorneys' Fees

31.    Nationwide admits that Plaintiff has engaged the services of an attorney for representation in this case. Nationwide can neither admit nor deny the remaining allegations in Paragraph 31 of Plaintiff's Original Petition due to a lack of knowledge or sufficient information to form a belief. Nationwide denies the remaining allegations set forth in Paragraph 31 of Plaintiff's Original Petition. Nationwide further denies that Plaintiff is entitled to the relief sought in Paragraph 31 of Plaintiff's Original Petition.

32.     Nationwide denies the allegations set forth in Paragraph 32 of Plaintiff's Original Petition. Nationwide further denies that Plaintiff is entitled to the relief sought in Paragraph 32 of Plaintiff's Original Petition.

33.     Nationwide denies the allegations set forth in Paragraph 33 of Plaintiff's Original Petition. Nationwide further denies that Plaintiff is entitled to the relief sought in Paragraph 33 of Plaintiff's Original Petition.

## VII.
## CONDITIONS PRECEDENT

34.     Nationwide denies the allegations set forth in Paragraph 34 of Plaintiff's Original Petition.

## VIII.
## PRAYER

35.     Nationwide denies the allegations set forth in the Prayer in the Prayer set forth in Plaintiff's Original Petition. Nationwide further denies that Plaintiff is entitled to any of the damages or relief sought by Plaintiff in the Prayer of Plaintiff's Original Petition.

## II.    DEFENDANT NATIONWIDE AGRIBUSINESS INSURANCE COMPANY'S DEFENSES TO PLAINTIFF'S ORIGINAL PETITION

### First Defense
### Policy Provisions

36.     Plaintiff cannot recover, in whole or in part, on its breach of contract claim, and consequently on any of the other causes of action alleged in its Original Petition, because the Policy contains exclusions and provisions negating coverage, in whole or in part, for the damages alleged by Plaintiff. Nationwide's contractual obligations are determined by the terms, conditions, limitations, and exclusions contained in the Policy. Nationwide relies on such terms,

conditions, limitations, and exclusions in defense of the claims asserted against it. Potentially

applicable policy provisions include, but are not limited to:

### COMMERCIAL OUTPUT PROGRAM

. . .

Issued By: <u>NATIONWIDE AGRIBUSINESS INSURANCE COMPANY</u>

**Named Insured and Mailing Address**                Policy Number:   COP118400A
TEXAS FEED FAT INC
. . .

**Policy Period: From** 10/15/21                **To** 10/15/22
                12:01 A.M. Standard Time at your mailing address.
**Form of Business:** CORPORATION
**Description of Business:** FEEDMILLS FOR LIVESTOCK

* * *

### COMMERCIAL OUTPUT PROGRAM
### PROPERTY COVERAGE PART

**AGREEMENT**

In return for "your payment of the required premium, "we" provide the coverage described
herein subject to all the "terms: of the Commercial Output Program. This coverage is also subject
to the "schedule of coverages" and additional policy conditions relating to assignment or transfer
of rights or duties, cancellation, changes or modifications, inspections, and examination of books
and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".
Refer to Definitions for words and phrases that have special meaning. These words and phrases
are shown in quotation marks or bold type.

**DEFINITIONS**

1.  The words "you" and "your" mean the persons or organizations named as the insured on the
    "schedule of coverages".
2.  The words "we", "us", and "our" mean the company providing this coverage.
* * *

**PROPERY COVERED**

"We" cover the following property unless the property is excluded or subject to limitations.

"We" cover direct physical loss to covered property at a "covered location" caused by a covered
peril.

**BUILDING PROPERTY**

1. **Covered Building Property** – Covered Building Property means buildings and structures and:
   a. completed additions;
   b. fixtures, machinery, and equipment which are a permanent part of a covered building or structure;
   c. outdoor fixtures;

\* \* \*

## COVERAGE EXTENSIONS

\* \* \*

The flowing coverage extensions are not subject to and not considered in applying coinsurance when coinsurance conditions are added to this coverage.

\* \* \*

2. Debris Removal – "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:
   a. extract "pollutants" from land or water; or
   b. remove, restore, or replace polluted land or water.

"We: do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

However, "we" pay up to an additional $50,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

\* \* \*

## SUPPLEMENTAL COVERAGES

The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown in the "schedule of coverages". If a different "limit" is indicated in the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and part of, the applicable "limit" for coverage described under Property Covered. The "limit" available for coverage described under a Supplemental Coverage:
   a. is the only "limit" available for the described coverage; and
   b. is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

\* \* \*

5. **Ordinance or Law (Undamaged Parts of a Building)** – when a covered peril occurs to a covered building or structure, "we" pay for the value of undamaged parts of a covered

9

building or structure that is required to be demolished as a result of the enforcement of any ordinance, law, or decree that:

a. requires the demolition of undamaged parts of a covered building or structure that is damaged or destroyed by a covered peril;

b. regulates the construction or repairs of a building or structure, or establishes building, zoning, or land use requirements at a "covered location'; and

c. is in force at the time of loss.

\* \* \*

This coverage is part of and not in addition to the applicable "limit" for coverage described under Property Covered.

6. **Ordinance or Law (Increased Cost to Repair and Cost to Demolish and Clear Site)** –

a. **Increased Cost to Repair** – When a covered peril occurs to a covered building or structure, "we" cover the:

1) increased cost to repair, rebuild, or reconstruct damaged portions of a covered building or structure; and

2) increased cost to repair, rebuild, or reconstruct undamaged portions of a covered building or structure whether or not those undamaged portions need to be demolished;

as a result of the enforcement of building, zoning, or land use ordinance, law, or decree and is in force at the time when a covered peril occurs to a covered building or structure.

If a covered building or structure is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by building, zoning, or land use ordinance, law, or decree.

"We" do not cover the increased cost of construction until the covered building or structure is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss, not exceed two years.

\* \* \*

c. **We Do Not Cover** – "We" do not cover the costs associated with the enforcement of any ordinance, law, or decree that:

\* \* \*

2) "you" were required to comply with before the covered peril occurred to a covered building or structure, even is the building or structure was undamaged and "you" failed to comply with the ordinance, law, or decree.

d. **What We Pay If The Building Is Repaired or Replaced** – If the covered building or structure is repaired or replaced, "we" pay the lesser of:

1) the amount "you" actually spend to demolish and clear the site, plus the actual increased cost to repair, rebuild, or construct the property but not for more than a building or structure of the same height, floor area, and style; or

2) $100,000.

e. **What We Pay If The Building Is Not Repaired or Replaced** – If the covered building or structure is not repaired or replaced, "we" pay the lesser of:

1) the amount "you" actually spend to demolish and clear the site; plus the cost "you" would have incurred to replace the damaged or destroyed property with other property:

a) of like kind, and quality;

b) of the same height, floor area, and style; and

      c) used for the same purpose; or
2) $100,000.

\* \* \*

---

**PERILS COVERED**

---

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

---

**PERILS EXCLUDED**

---

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Ordinance or Law** – Except as provided under Supplemental Coverages – Ordinance or Law, "we" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

   "We" do not pay for loss regardless if the loss is caused by or results from the:

    1) enforcement of any code, ordinance, or law even if a building or structure has not been damaged; or

    2) increased costs that "you" incur because of "your" compliance with a code, ordinance, or law during the construction, repair, rehabilitation, remodeling, or razing of a building or structure, including the removal of debris, following a direct physical loss to the property.

   \* \* \*

   f. **Defects, Errors, and Omissions** – "We" do not pay for loss which results from one or more of the following:

    1) an act, error, or omission (negligent or not) relating to:

      \* \* \*

      b) the design, specification, construction, workmanship, installation, or maintenance of property;

      c) planning, zoning, development, siting, surveying, grading, or compaction; or

      d) maintenance or property (such as land, structures, or improvements);

     whether on or off a "covered location";

    2) a defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair, whether on or off a "covered location";

    3) [deleted by endorsement]

    \* \* \*

   But if a defect, error, or omission as described above results in a covered peril, "we" cover the loss or damage caused by that covered peril.

   \* \* \*

   j. **Loss of Use** – "We" do not pay for loss caused by loss of use, delay or loss of market.

   \* \* \*

   l. **Neglect** – "We: do not pay for loss caused by "your" neglect to use all reasonable means to save covered property at and after the time of loss.

11

"We" do not pay for loss caused by "your" neglect to use all reasonable means to save and preserve covered property when endangered by a covered peril.

\* \* \*

n.  **Seepage** – [modified by endorsement]

o.  **Settling, Cracking, Shrinking, Bulging, or Expanding** – "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs. But if settling, cracking, shrinking, bulging, or expanding resulting in a "specified peril" or that breakage of building glass, "we: cover the loss or damage caused by that "specified peril" or the breakage of building glass.

\* \* \*

s.  **Wear and Tear** – "We" do not pay for loss caused by wear and tear, marring, or scratching.
But if wear and tear, marring, or scratching results in a "specified peril" or the breakage of building glass, "we: cover the loss or damage caused by the "specified peril" or the breakage of building glass.

t.  **Weather** – "We: do not pay for loss caused by weather conditions if the weather conditions contribute in any way with a cause or event excluded in paragraph 1. Above to produce the loss or damage.
But if weather conditions result in a covered peril, "we" cover the loss or damage caused by the covered peril.

\* \* \*

## WHAT MUST BE DONE IN CASE OF LOSS

1.  **Notice** – In case of a loss, "you" must:

    a.  give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice);

    \* \* \*

2.  **Protect Property** – "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However "we" will no pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3.  **Proof of Loss** – "You" must send "us" within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

    a.  the time, place, and circumstances of the loss;

    b.  other policies of insurance that may cover the loss;

    c.  "your" interest and the interests of all others in the property involved, including all mortgages and liens;

    d.  changes in title or occupancy of the covered property during the policy period;

    e.  detailed estimates for repair or replacement of covered property; and

    f.  An inventory of damaged and undamaged covered property showing in detail the quantity, description, cost, actual cash value, and amount of the loss. "you" must attach to the inventory copies of all bills, receipts, and related documents that substantiate the inventory.

4. **Examination** – "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we: have the right to examine and receive statements separately and not in the presence of others.

\* \* \*

6. **Damaged Property** – "You" must exhibit the damages and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

\* \* \*

9. **Cooperation** – "You" must cooperate with "us" in performing all acts required by the Commercial Output Program coverages.

## VALUATION

1. **Replacement Cost** – The value of covered property will be based on replacement cost without any deduction for depreciation unless Actual Cash Value is indicated on the "schedule of coverages".

   The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

   Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

   This replacement cost provision does not apply to paragraphs 3. Through 13. Below.

2. **Actual Cash Value** – When Actual Cash Value is indicated on the "schedule of coverages" for covered property, the value of covered property will be based on the actual cash value at the time of the loss (with a deduction for depreciation) except as provided in paragraphs 3. Through 13. Below.

\* \* \*

## HOW MUCH WE PAY

1. **Insurable Interest** – "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** – "We" pay only that part of "your" loss over the deductible amount stated on the "schedule of coverages" in any one occurrence. The deductible applies to the loss before application of any coinsurance or reporting provisions.

\* \* \*

4. **Loss Settlement Terms** – Subject to paragraphs 1., 2., 3., 5., 6., and 7. under How Much We Pay and coinsurance provisions (if applicable), "we": pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to covered property.

\* \* \*

## LOSS PAYMENT

1. **Our Options** – In the event of loss covered by this coverage form, "we" have the following options:

   a. pay the value of the lost or damaged property;

   b.  pay the cost of repairing or replacing the lost or damaged property;

   c.  rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or

   d.  take all or any part of the property at the agreed or appraised value.

[modified by endorsement]

\* \* \*

## OTHER CONDITIONS

In addition to the "terms" which are contained in other sections of the Commercial Output Program coverages, the following conditions apply.

\* \* \*

8.  **Policy Period** – "We" pay for a covered loss that occurs during the policy period.

\* \* \*

12.  **Suit Against Us** – No one may bring a legal action against "us" under this coverage unless:

   a.  all of the "terms" of the Commercial Output Program coverages have been complied with; and

   b.  the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation, then suit must begin within the shortest time period permitted by the law.

\* \* \*

**SCHEDULE OF COVERAGES**

**COMMERCIAL OUPUT PROGRAM**

(The information required to complete this schedule

will be shown below or on the "schedule of coverages.")

**Catastrophe Limit** – The most "we" will pay for any         Limit of Insurance
combination of or total of losses arising under one
or more coverages in any one occurrence is:

## PROPERTY COVERAGE PART

## LIMITS

-   Building Property Limit – The most "we" pay
     for loss at any once "covered location" is:

-   Business Personal Property Limit – The most
     "we" pay for loss at any one "covered
     location" is:

               or

   Combined Blanket Limit – The most "we" pay
   for loss at any one "covered location" is:

14

[**X**] Refer To Schedule Locations

**COVERAGE EXTENSIONS**

- Consequential Loss                                                                      $10,000
- Debris Removal, Additional Expense                        25% OF LOSS + $50,000
* * *

**SUPPLEMENTAL COVERAGES**

- Ordinance or Law (Undamaged Parts of a Building)                    $100,000
- Ordinance of Law (Increased Cost to Repair/Cost to Demolish and Clear Site    $100,000
* * *

- Pollutant Cleanup and Removal

---

**DEDUCTIBLE**

---

Check One

[ ] Deductible Amount

[X] Refer to Deductible Endorsements

* * *

**LOCATION SCHEDULE**

(The entries to complete this endorsement
will be shown below or on the "schedule of coverages".)

Coverage provided by the Commercial Output Program coverage parts applies only to the "covered locations" described below. Refer to "schedule of coverages" for applicable "limits", additional coverages, and applicable coinsurance percentage.

---

**SCHEDULE**

---

**Loc.
No.**         **Covered Location (Describe)**
0002          149 Dairy Road
              Hereford, TX 79045

| **Covered Property/Coverage Provided (Describe)** | **Limit** |
|---|---|
| BUILDING PROPERTY AND BUSINESS PERSONAL PROPERTY EXCLUDING "STOCK," "MOBILE EQUIPMENT" AND "COMPUTERS" | $2,188,649 |
| BUSINESS PERSONAL PROPERTY CONSISTING OF "STOCK" | $2,950,000 |

* * *

**Loc.**

**No.**          **Covered Location (Describe)**
0005             3715 S Progressive Rd
                 Hereford, TX 79045

| **Covered Property/Coverage Provided (Describe)** | **Limit** |
|---|---|
| BUILDING PROPERTY AND BUSINESS PERSONAL PROPERTY EXCLUDING "STOCK," "MOBILE EQUIPMENT" AND "COMPUTERS" | $288,000 |
| BUSINESS PERSONAL PROPERTY CONSISTING OF "STOCK" | $0 |

**Loc.**
**No.**          **Covered Location (Describe)**
0006             All "Covered Locations"

| **Covered Property/Coverage Provided (Describe)** | **Limit** |
|---|---|
| EARNINGS AND EXTRA EXPENSE | $1,200,000 |
| BUSINESS PERSONAL PROPERTY CONSISTING OF "COMPUTERS" | $20,000 |

\* \* \*

This endorsement changes
The policy
**– PLEASE READ THIS CAREFULLY –**


**PROPERTY EXCLUDED**


**PROPERTY NOT COVERED**


"We" do not cover the property described below:
LOCATION # 1 TWO TANKS NOT USED. ALSO SCALES.
LOCATION 2 ALL RR SIDE TRACKS
LOCATION 3 ALL PROPERTY EXCEPT 5600 SQFT WHSE BUILT IN 1998 WITH $10,400 BPP INSIDE
ALL PROPERTY AT 831 FM 407 W ARGYLE TX

\* \* \*

**MORTGAGEES/LOSS PAYEES COVERAGE ENDORSEMENT**
This endorsement modifies insurance provided under the following:
        COMMERCIAL OUTPUT PROGRAM – PROPERTY COVERAGE PART

Coverage for mortgagees and/or loss payees will automatically be provided under this policy when "you" are required by specific written contractual agreement to include such entity as a mortgagee and/or loss payee.


**FUNGI OR BACTERIA EXCLUSION**

16

This endorsement modifies insurance provided under the following:
COMMERCIAL OUTPUT PROGRAM – PROPERTY COVERAGE PART
COMMERCIAL OUTPUT PROGRAM – INCOME COVERAGE PART

I.   The following exclusion is added to Section 2. of **PERILS EXCLUDED**:

**Fungi, Wet Rot, Dry Rot and Bacteria**

Except as provided under paragraph IV. below, "we" do not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of any "fungi", wet or dry rot or bacteria.
Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

But if "fungi", wet or dry rot or bacteria results in a "specified peril", "we" will pay for the loss or damage caused by that "specified peril".

This exclusion does not apply:
(a) When "fungi", wet or dry rot or bacteria results from fire or lightning; or
(b) To the extent that coverage is provided in Paragraph IV. below, with respect to loss or damage caused by a cause of loss other than fire or lightning.

II.  Exclusion **c. Contamination or Deterioration** in Section 2. of **PERILS EXCLUDED** is deleted and replaced by the following:

**c. Contamination or Deterioration** – "We" do not pay for loss caused by contamination or deterioration including decay, rust or other corrosion or erosion, or any quality, fault or weakness in covered property that causes it to damage or destroy itself. "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

However, "we" do cover loss caused by decay, rust or other corrosion or erosion to "computers" that results from direct physical damage by a covered peril to the air conditioning system that services "your" "computers".

III. Exclusion n. **Seepage** in Section 2. of **PERILS EXCLUDED** is deleted and replaced by the following:

**n. Seepage** – "We" do not pay for loss caused by continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

IV. The following **Limited Coverage For Fungi, Wet Rot, Dry Rot And Bacteria** is added to the **OTHER COVERAGES** Section:

**Limited Coverage For Fungi, Wet Rot, Dry Rot And Bacteria**

a. The coverage described in Paragraphs b. and f. below only applies when the "fungi", wet or dry rot or bacteria is the result of a "specified peril" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to

17

save and preserve the     property from further damage at the time of and after that occurrence.

b.  "We" will pay for loss or damage by "fungi", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   (1)  Direct physical loss or damage to covered property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;
   (2)  The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and
   (3)  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

c.  The coverage described under Paragraph b. of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most "we" will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period).

   With respect to a particular occurrence of loss which results in "fungi", wet or dry rot or bacteria, "we" will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

d.  The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any covered property. If a particular occurrence results in loss or damage by "fungi", wet or dry rot or bacteria, and other loss or damage, "we" will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected covered property.

   If there is covered loss or damage to covered property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

e.  The terms of this Limited Coverage do not increase or reduce the coverage provided under **OTHER COVERAGES - 1. Collapse.**

f.  The following, f.(1) or f.(2) applies only if the COMMERCIAL **OUTPUT PROGRAM – INCOME COVERAGE PART** applies to the described premises and only if the suspension of "your" "business" operations satisfies all terms and conditions of the **COMMERCIAL OUTPUT PROGRAM – INCOME COVERAGE PART**.

   (1)  If the loss which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a suspension of "your" "business" operations, but such suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot or bacteria, then our payment under the **INCOME COVERAGE PART** is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

18

(2) If a covered suspension of operations was caused by loss or damage other than "fungi", wet or dry rot or bacteria but remediation of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", "we" will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the period of restoration), but such coverage is limited to 30 days. The days need not be consecutive.

g.  The deductible amount stated in the Declarations will apply to this Limited Coverage.

V. The following is added to the **DEFINITIONS** Section:

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

* * *

## MORTGAGEE / LOSS PAYABLE SCHEDULE

Indicate applicable provision:
[X] Mortgage

**SCHEDULE**

First National Bank of Hereford
Attn: Myron
PO Box 1033
Hereford TX 79045

Location Covered Property
Mortgagee on Warehouse and Frame Dwelling Located at 149 Dairy Rd, Hereford, TX

Indicate applicable provision:
[X] Mortgage

**SCHEDULE**

First United Bank
1400 West Main St
Durant OK 74701

Location Covered Property
Mortgagee with respect to Property and Stock

* * *

## COSMETIC LOSS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERCIAL OUTPUT PROGRAM – PROPERTY COVERAGE PART

19

**DEFINITIONS**

For purposes of the coverage provided under this endorsement, the following are added to **DEFINITIONS:**

"Cosmetic loss" means loss that alters the physical appearance of a "roof covering" or "siding", but does not result in the failure to perform its intended function of keeping out the elements.

"Roof covering" means the roofing material exposed to the weather, the underlayments applied for moisture protection, vents, and all flashings required in the replacement of a roof covering.

"Siding" means the material providing protection to the building or structure that is exposed to weather.

**PERILS EXCLUDED**

For the purpose of coverage provided under this endorsement, the following is added to paragraph 2. Of **PERILS EXCLUDED:**

**Cosmetic Loss**—"We" do not pay for loss or damage arising out of or resulting from "cosmetic loss" to "roof coverings" or "siding" of buildings and structures caused by hail shown on the **COSMETIC LOSS EXCLUSION SCHEDULE.**

This exclusion does not apply to loss or damage caused by hail to "roof coverings" or "siding" that will allow the penetration of water through the "roof covering" or "siding", or that results in the failure of the "roof covering" or "siding" to perform its intended function of keeping out the elements.

**COSMETIC LOSS EXCLUSION SCHEDULE**

No coverage is provided for "cosmetic loss" for the locations listed on this schedule

**SCHEDULE**

6        ALL "COVERED LOCATIONS",
         ALL BUILDING AND BPP.

* * *

**AGREED VALUE PLUS ENDORSEMENT**

This endorsement modifies insurance provided under the following:
         COMMERCIAL OUTPUT PROGRAM – PROPERTY COVERAGE PART

**VALUATION**

For purposes of coverage under this endorsement, the VALUATION provisions 1. and 2. Are deleted and replaced by the following provision only as it regards covered building property described on the schedule of this endorsement.

20

**Agreed Value –** Covered building property described on the schedule of this endorsement will be valued at the "limit" indicated for the described building property.

**HOW MUCH WE PAY**

In the event of a total loss to covered building property shown in the schedule of this endorsement, paragraph 4. **Loss Settlement Terms** is deleted and replaced with the following:

> 4. **Loss Settlement Terms**— Subject to paragraphs 1., 3., 5., 6., and 7. Under How Much We Pay and coinsurance provisions (if applicable),
>
>> a. In the event of a total loss "we" will pay:
>>> 1. The "limit" to the covered building property as described on the schedule of this endorsement, and
>>> 2. An additional 15% of the limit, up to $250,000 upon proof of improvements or betterments to the covered building made since the effective date of this policy period that exceed the limit shown in the schedule of this endorsement.
>>> 3. No deductible applies in the event of a total loss.

Any "limit" for covered property listed on the **SCHEDULE** below is separate from, and not part of, the blanket "limit" for the location listed on any other "schedule of coverages". The "limit" available for the covered property described below is the only "limit" available for the covered property.

**LOSS PAYMENT**

In the event of a covered loss to building property shown in the schedule of this endorsement LOSS PAYMENT **1. Our Options** is deleted and replaced with the following:

> 1. **Our Options –** "We" have the following options:
>> a. In the event of a total loss covered by this endorsement "we" will pay:
>>> 1. The "limit" that applies to covered building property shown in the schedule of this endorsement, and
>>> 2. An additional 15% of the "limit", up to $250,000 if the covered building property can be shown to exceed the "limit" shown in the schedule of this endorsement.

**SCHEDULE**

| Location Number | Building Description | Limit |
|---|---|---|
| 1 | 2)  CB WAREHOUSE MINERAL BARN | $28,919 |
| 1 | 3)  DWELLING | $26,290 |
| 1 | 4)  OFFICE LAB | $70,981 |
| 1 | 5)  BREAKROOM | $19,717 |
| 1 | 6)  LIQUID FAT TANKS | $112,487 |
| 1 | 7)  LIQUID FAT TANKS | $56,244 |
| 1 | 8)  GREASE ROOM BROILER ROOM | $88,400 |
| 1 | 9)  LIQUID FAT TANKS | $236,602 |
| 1 | 10) LOAD OUT SHOP | $69,667 |
| 1 | 11) SKIC DRIVER DISPATCH OFFICE | $6,573 |
| 1 | 12) VAN BOX | $2,630 |
| 1 | 14) RR SIDING | $27,302 |
| 1 | 16) AG FUEL TANK & DISPENSER | $29,120 |
| 2 | 2)  LIQUID FAT TANKS | $624,000 |
| 2 | 4)  DWELLING | $234,000 |
| 2 | 5)  WAREHOUSE | $308,523 |
| 2 | 6)  QUALITY CONTROL LAB | $140,608 |
| 2 | 8)  SIX LIQUID FAT TANKS | $208,000 |
| 4 | 1)  DWELLING | $156,000 |

| Location Number | Building Description | Limit |
|---|---|---|
| 4 | 2) BARN | $40,000 |
| 4 | 5) OFFICE/WHSE/GREASE PIT BOILER | $175,000 |
| 4 | 6) THREE LIQUID FAT TANKS | $125,000 |
| 4 | 7) FIVE LIQUID FAT TANKS | $75,000 |
| 5 | 1) BUILDING | $288,000 |

## WINDSTORM OR HAIL
## MINIMUM AND PERCENTAGE DEDUCTIBLE

The "terms" of this endorsement apply to property for which entries have been made on the Windstorm Or Hail Schedule or on the "schedule of coverages" to show a Windstorm Or Hail Percentage Deductible.

All other "terms" of this policy apply.

### HOW MUCH WE PAY
**Deductible** -- The Deductible provision under How Much We Pay is replaced by the provisions on this endorsement when loss to covered property identified on the Windstorm Or Hail Schedule is caused by or results from windstorm or hail.

1. **Applicable Deductible** -- The Windstorm Or Hail Deductible indicated on the Windstorm Or Hail Schedule is applicable to loss or damage to covered property caused directly or indirectly by the perils of windstorm or hail.

2. **Weather Condition Other Than Windstorm Or Hail** -- Loss or damage resulting from a covered weather condition, other than windstorm or hail, will be considered to be caused by windstorm or hail and will be considered part of the windstorm or hail occurrence if the loss or damage would not have occurred without the weather conditions of windstorm or hail.

3. **Deductible** --
   a. **Percentage** -- When a percentage deductible is indicated on the Windstorm Or Hail Schedule, "we" pay only that part of "your" loss over the deductible amount in any one occurrence for each building described on the Schedule. The deductible amount is

22

determined by applying the percentage indicated on the schedule to the value of the covered property that is involved in the loss.

b. **Minimum—**When a Minimum deductible is indicated on the Windstorm or Hail Schedule, "we" pay only that part of "your" loss over the deductible amount for each location described on the Schedule in any one occurrence. When a Minimum deductible is indicated on the Windstorm or Hail Schedule, the applicable deductible for each location listed is the greater of:
　　1. the minimum deductible; or
　　2. the sum of the percentage deductibles determined in subsection (a) for the locations indicated on the Schedule in any one occurrence.

c. **Value Determined At Time Of Loss** -- As regards the determination of the deductible, the value of covered property is determined at the time of loss or damage and in accordance with the provisions described under the Valuation section of the policy.

d. **Percentage Deductible Applies Separately** -- The percentage deductible applies separately to:

1) each building or structure, including business personal property within each building or structure;
2) business personal property within a building or structure where the building or structure is not covered by this policy; and
3) business personal property in the open or in a vehicle.

* * *

## WINDSTORM OR HAIL SCHEDULE
## MINIMUM AND PERCENTAGE DEDUCTIBLE

(The entries required to complete this schedule will be shown below or on the "Schedule of coverages".) Enter a response for Percentage Deductible to apply per Building on the Covered Location listed and for the Minimum Deductible to apply per occurrence for each location on the schedule.

## SCHEDULE

Windstorm Or Hail Deductible:

| Loc. No | Covered Location | Percentage Deductible Per Building | Minimum Deductible Per Location |
|---------|------------------|-----------------------------------|--------------------------------|
| 1 | 585 SILO ROAD,  DURANT, OK, 74701 | 2 | $25,000 |
| 2 | 149 DAIRY ROAD,  HEREFORD, TX, 79045 | 2 | $25,000 |
| 3 | 467 SOLO RD,  DURANT, OK, 74701 | 2 | $25,000 |
| 4 | 17563 MATANY RD,  JUSTIN, TX, 76247 | 2 | $25,000 |
| 5 | 3715 S PROGRESSIVE RD,  HEREFORD, TX, 79045 | 2 | $25,000 |

23

**METAL ROOF AND SIDING LOSS SETTLEMENT PROVISION**

This endorsement modifies insurance provided under the following:
COMMERCIAL OUTPUT PROGRAM – PROPERTY COVERAGE PART

## HOW MUCH WE PAY

For purposes of coverage provided under this endorsement, only as it regards covered building property, 4. Loss Settlement Terms is deleted and replaced with the following:

4. **Loss Settlement Terms-** The most "we" will pay in any one occurrence for loss or damage to aluminum, steel, or other metal roofing or siding caused directly or indirectly by hail or wind driven hail for covered property is:

1) 30% of the total cost to repair or replace the damaged part(s) of the building or structure with material of like kind and quality and for like use if Replacement Cost valuation applies; or

2) 20% of the total cost to repair or replace the damaged part(s) of the building or structure with material of like kind and quality and for like use if Actual Cash Value is expressly indicated in the "Schedule of Coverages".

3) 20% of the total cost to repair or replace the damaged part(s) of the building or structure with material of like kind and quality and for like use if Agreed Value Plus or Limited Agreed Value Plus endorsement, Stated Amount Endorsement, Functional Replacement Cost Endorsement, is attached to the policy.

"You" are required to notify "us" in writing of "your" intent to complete repairs or replacement within 180 days of reporting of the damaged part of the building or structure to collect the additional payments under "your" Commercial Output Program-Property Coverage Part.

Upon completion of repair or replacement of the damaged part of the building or structure, this Metal Roof and Siding Loss Settlement Provision no longer applies.

As used in this endorsement:

1) Roofing means the roofing material exposed to the weather, the underlayments applied for moisture protection, and all flashings required in the replacement of a roof covering.

2) Siding means the material providing protection to the building or structure that is exposed to weather.

3) The total cost to repair or replace includes all labor, materials, equipment and associated costs necessary to repair or replace the loss or damage to roofing or siding.

24

The Loss Settlement provisions on this endorsement do not apply to covered building property described on the schedule of this endorsement.

## SCHEDULE

**The buildings listed on this schedule are not impacted by the changes in this coverage form.**

37.      The assertion of any specific provision of the Policy in this Answer is not intended as a waiver or abandonment of other applicable provisions of the Policy. The Policy in its entirety is asserted and incorporated herein by reference.

## Second Defense
## <u>No Breach of Policy</u>

38.      Plaintiff's claim has been properly investigated, adjusted, evaluated, and paid. There has been no breach of the Policy, thereby precluding recovery of damages pursuant to any contractual and extra-contractual theory of liability, including but not limited to violation(s) of the Texas Insurance Code.

## Third Defense
## <u>Failure of Conditions Precedent</u>

39.      Plaintiff has failed to comply with one or more provisions of the Policy and, therefore, is precluded from bringing suit to enforce the Policy. The Policy expressly states:

12. **Suit Against Us** – No one may bring a legal action against "us" under this
    coverage unless:
    a.  all of the "terms" of the Commercial Output Program
        coverages have been complied with; and
    b.  the suit has been brought within two years after "you" first
        have knowledge of the loss.
    If any applicable law makes this limitation, then suit must begin within the
    shortest time period permitted by the law.

40.      Specifically, Plaintiff has failed to fulfill his duties after a loss as required by the Policy, including but not limited to:

1. **Notice** – In case of a loss, "you" must:

25

a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice);

\* \* \*

2. **Protect Property** – "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However "we" will no pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss** – "You" must send "us" within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:
   a. the time, place, and circumstances of the loss;
   b. other policies of insurance that may cover the loss;
   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;
   d. changes in title or occupancy of the covered property during the policy period;
   e. detailed estimates for repair or replacement of covered property; and
   f. An inventory of damaged and undamaged covered property showing in detail the quantity, description, cost, actual cash value, and amount of the loss. "you" must attach to the inventory copies of all bills, receipts, and related documents that substantiate the inventory.

4. **Examination** – "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we: have the right to examine and receive statements separately and not in the presence of others.

\* \* \*

6. **Damaged Property** – "You" must exhibit the damages and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

\* \* \*

9. **Cooperation** – "You" must cooperate with "us" in performing all acts required by the Commercial Output Program coverages.

41.     Accordingly, because Plaintiff has not met all conditions precedent to filing this lawsuit, Plaintiff is contractually precluded from bringing suit against Nationwide.

## Fourth Defense
## Failure to Mitigate/Contribution

42.     Plaintiff is barred from any recovery from Nationwide, in whole or in part, due to Plaintiff's own fault, acts and/or omissions, negligence, breach of duty, violation of statute, its failure to mitigate the alleged damages, its contribution to its own alleged damages, and/or

breach of contract or that of its agents, representatives, or employees. This includes, but is not limited to, Plaintiff's failure to properly maintain the roof, fat tanks, interior, and exterior of the Property.

**Fifth Defense**
**<u>Lack of Coverage Precludes Extra-Contractual Liability</u>**

43.     The existence of coverage for an insurance claim is necessary to establish the basis of claims for violations of the Texas Insurance Code and common law bad faith. Because Plaintiff's allegations are generally based upon Nationwide's alleged failure to timely pay policy benefits, the absence of coverage for the allegedly unpaid amounts of the underlying insurance claim precludes the extra-contractual claims against Nationwide as a matter of law.

**Sixth Defense**
**<u>*Bona Fide* Dispute</u>**

44.     Under Texas law, an insured bringing an action against its insurer for an alleged breach of the duty of good faith and fair dealing, whether under the common law or as authorized by statute, must carry the burden of proof to establish that the insurer unreasonably denied or delayed payment of an insurance claim when the insurer's liability had become reasonably clear. At all times material to this lawsuit, Nationwide's liability was not "reasonably clear." In other words, nothing more than a *bona fide* coverage dispute exists between the parties, which does not permit Plaintiff to recover extra-contractual damages in this case.

**Seventh Defense**
**<u>Loss Settlement Provisions</u>**

45.     Nationwide relies on the loss settlement provisions set forth in the relevant insurance policy limiting loss payments as set forth in the Policy.

27

**Eighth Defense**
**Limits of Liability**

46.     Any recovery by Plaintiff is subject to the applicable dwelling limits set forth previously. Additionally, Plaintiff may not recover more than its financial interest in the Property.

**Ninth Defense**
**Deductible**

47.     To the extent any additional damage to the covered property is determined by the factfinder to be the result of hail storm as alleged in Plaintiff's Original Petition, which is denied, Plaintiff's recovery is subject to a deductible of 2% of the separate Policy limit for each building listed on the Policy's schedule.

**Tenth Demand**
**Excessive Demand**

48.     Nationwide asserts that Plaintiff is not entitled to attorney's fees as Plaintiff has asserted excessive demands. Nationwide received a letter from Plaintiff's counsel dated April 26, 2022, in which Plaintiff's counsel demanded $700,000 in "actual damages" and $10,440 for "attorney's fees to date" for a total amount of $710,440. However, Plaintiff also warned that "we cannot and will not resolve this dispute for the amount of damages and fees listed above." Plaintiff has acted unreasonably and in bad faith by demanding monies to which Plaintiff is not entitled under the Policy, thereby making the demand unreasonable and, consequently, excessive.

**Eleventh Defense**
**Due Process and Equal Protection**

49.     To the extent Plaintiff seeks punitive damages, Nationwide invokes its right under the due process clause of the Fifth Amendment of the United States Constitution as applied to the

states through the Fourteenth Amendment of the United States Constitution. Nationwide affirmatively pleads that Plaintiff's pleading of punitive and/or exemplary damages violates the due process clauses of the Fifth and Fourteenth Amendments.

50.     To the extent Plaintiff seeks punitive damages, Nationwide asserts that such request should be denied because it violates the equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, the provisions of the Eighth Amendment to the United States Constitution, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

<b>Twelfth Defense</b><br>
<b><u>Plaintiff Failed to Comply with Notice Requirements of Tex. Ins. Code § 542A.003</u></b>

51.     Chapter 542A of the Texas Insurance Code applies to Plaintiff's lawsuit as it is an action on a claim under an insurance policy covering real property that arises from alleged hail damage. Plaintiff failed to give proper notice under Tex. Ins. Code § 542A.003, precluding or limiting any right Plaintiff may have to recover attorneys' fees. Specifically, Tex. Ins. Code § 542A.003 requires that Plaintiff provide written notice to Nationwide not later than the 61st day before the date Plaintiff files an action which Chapter 542A applies that must include:

(1)     a statement of the acts or omissions giving rise to the claim;

(2)     the specific amount alleged to be owed by the insurer on the claim for damage to alleged to be owed by the insurer on the claim for damage to or loss of covered property; and

(3)     the amount of reasonable and necessary attorneys' fees incurred by the claimant, calculated by multiplying the number of hours actually worked by claimant's attorney, as of the date the notice is given and as reflected in contemporaneously kept time records, by an hourly rate that is customary for similar legal services.

52.     Furthermore, if an attorney or other representative gives the notice required under Chapter 542A, the attorney or representative must:

29

53.      Plaintiff's counsel sent a demand letter to Defendant dated May 2, 2023, in which Plaintiff asserted $700,000 in "actual damages" and $10,440 for "attorney's fees to date" for a total amount of $710,440. However, Plaintiff then stated "[i]t is likely that the damages ultimately sought at trial will be well in excess of the damages that have been identified to date . . . ." Finally, the letter went on to state "Needless to say, even if a settlement offer that included the attorneys' fees set forth above were extended today, it would fall far short of making our client whole. In other words, we cannot and will not resolve this dispute for the amount of damages and fees listed above." By making these statements, Plaintiff's counsel's letter did not state the specific amount alleged to be owed by Defendant on the claim for damage to or loss of covered property.  In addition, Plaintiff's demand does not provide presuit notice as required by Tex. Ins. Code § 542A.003 because the "statement of the acts or omissions giving rise to the claim" is a boilerplate and conclusory series of allegations without any mention of specific facts giving rise to the subject lawsuit such that it fails to place Defendant on notice of any alleged wrongdoing. Therefore, Plaintiff did not provide presuit notice as required by Tex. Ins. Code § 542A.003.

54.      Accordingly, pursuant to Tex. Ins. § 542A.007(d), the Court may not award Plaintiff any attorney's fees incurred after the date Nationwide first filed a pleading alleging this defense (November 22, 2023). In the alternative, to the extent the letter is deemed timely and otherwise in compliance with the pre-suit notice requirements under Chapter 542A, the provisions of § 542A.007(a) and (c) may limit or preclude recovery of attorney's fees based on the excessive amounts demanded by Plaintiff.

**Thirteenth Defense**
**Statutory Limitations for Punitive Damages**

30

55.     Any recovery by Plaintiff for punitive damages would be subject to the limitations on liabilities and damages contained in Chapter 41 of the Texas Civil Practice and Remedies Code, as well as all other statutory damage caps provided by law.

**Fourteenth Defense**
**Punitive Damage Limitation**

56.     With respect to Plaintiff's claims for damages, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of Texas Civil Practice & Remedies Code §§ 41.002 – 41.009.

**Fifteenth Defense**
**Tolling of Penalties**

57.     Plaintiff's live pleading seeks recovery of statutory penalties under Chapter 542 of the Texas Insurance Code. Nationwide denies liability under this statute; however, if upon final hearing and trial, the fact finder determines that there have been violations of this statute, Nationwide urges the Court to determine that all penalties during any delays attributable to Plaintiff of Plaintiff's attorneys should be tolled.

**Sixteenth Defense**
**Payment**

58.     Plaintiff's claim has been properly investigated, adjusted, evaluated, and paid. Plaintiff has been reasonably compensated for covered damages submitted under the terms of the Policy. Specifically, Nationwide has issued payments for covered damages to the Property arising out of the Claim totaling $270,236.81 as set forth below:

- $198,831.43 issued on June 14, 2022 for damages to the fat tanks at the Property;

- $56,505.30 issued on November 1, 2022 for overhead and profit charges, and damages in the interior of the warehouse office;

- $5,787.23 issued on February 3, 2023 for additional interior damages;

- $5,310.33 issued on March 27, 2023 for HVAC damages; and

- $3,802.52 issued on May 23, 2023 for costs associated with destructive testing.

**Seventeenth Defense**
**Non-Segregation of Damages**

59.     Nationwide asserts that Plaintiff has failed to segregate damages caused by covered damage to the Property under the Policy and causes of loss to the Property uncovered under the Policy.

## III.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Nationwide Agribusiness Insurance Company respectfully prays that Plaintiff take nothing, that Nationwide be awarded its reasonable and necessary attorneys' fees and costs, and for such other and further relief to which Nationwide may be justly entitled.

*(Signature on following page.)*

Respectfully submitted,

*/s/ Patrick M. Kemp*

Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Ave., Ste. 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT
NATIONWIDE AGRIBUSINESS INSURANCE
COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served electronically via CM/ECF this the 11th day of March, 2024 to:

James W. Willis
Wray Willis, LLP
901 Heights Blvd.
Houston, Texas 77008
jwillis@dalyblack.com

Richard D. Daly
C. Eric Vickers
Daly & Black, P.C.
2211 Norfolk St., Ste. 800
Houston, Texas 77098
rdaly@dalyblack.com
evickers@dalyblack.com
efs@dalyblack.com

*/s/ Patrick M. Kemp*

Patrick M. Kemp